### MEACHAM v. BURGISS et ux.

(District Court, S. D. Florida. July 18, 1924.)
No. 296.

**1. Vendor and purchaser ⬤⟹130(8)—Defect of title; highway an incumbrance, when property consists of lots.**

Where a contract gave complainant an option to purchase a strip of land fronting on the ocean, described as lots, the price to be a stated sum per front foot of the ocean frontage, and the property was valuable only for residential purposes, the contract was subject to the rule applicable to town property, and a highway established over the land constituted an incumbrance, which prevented defendants from giving good title as required by the contract.

**2. Vendor and purchaser ⬤⟹337—Optionee held entitled to lien for money expended under contract, when title defective.**

Where complainant, having an option to purchase property, declared his intention to exercise the option, and had the property surveyed and the title examined, as required by the contract, he occupied the position of a contract purchaser, with the right to a lien for the amount so expended, where, because of defects, the vendors were unable to give a good title.

In Equity. Suit by Malcolm Meacham against W. W. Burgiss and wife. On motion by defendants to dismiss bill, and to strike out certain portions. Denied.

E. J. L'Engle, of Jacksonville, Fla. (S. C. Kearley, of West Palm Beach, Fla., on the brief), for complainant.

Cooper, Cooper & Osborne, of Jacksonville, Fla., for defendants.

CALL, District Judge. The complainant filed his amended bill in which he alleges that for the sum of $10,000, paid by him to them, he was given an option by defendants to purchase, on or before July 13, 1923, certain lots on Jupiter Island, and the right,

title, and interest of the defendants in a certain 100-foot strip parallel to the Atlantic Ocean, lying between the east of said lots and said ocean. This option contained the provision that the complainant, by the payment of an additional $10,000, could extend the option until October 12, 1923. A plat of the island was attached to the option, showing the lots described in the option, and reference thereto made.

The option contains the following: "It is expressly understood and agreed that the said Burgiss is in position to deliver a good and merchantable title to the above-described property, and shall furnish the said Malcolm Meacham with deeds containing the full statutory form of warranties as set forth in the statutory form of warranty deed," etc. Such a deed, under the statutes of Florida, is a warranty deed with full common-law covenants of warranty. After alleging the payment of second $10,-000 and the extension of the option, it further alleged that the complainant, after notifying the defendant that he intended to exercise his option, had the title examined and the lines of the property surveyed, and the true lines run by a competent engineer, and then for the first time discovered that by certain proceedings of the county commissioners of Palm Beach county, set out in the bill, a public highway 80 feet in width, 12 feet of which had been hard-surfaced, had been laid out across a portion of said lots. It is also alleged that there are no marks upon the ground to show the limits of the 100-foot reserve or the 80-foot right of way; that thereupon the complainant, within the time of said option, notified the defendants of the incumbrance upon the title of said property by reason of said highway, and demanded the return of said $20,000 and the expense incurred for the survey and counsel fees incurred in the search of the title; that defendants refused to concede that the title was incumbered and declined to take any action to remove same. The map attached to the bill shows the lots to which the option applied consisted of a strip of land lying between the Indian river and the Atlantic Ocean, varying in width from east to west from 200 feet to 1,000 feet. The purchase price was to be $35 per front foot along the Atlantic Ocean. The bill alleges that the property was valuable for residential purposes and of no value for agricultural purposes.

[1] The defendants move to dismiss the amended bill and to strike certain portions. The motion to dismiss is based upon vari-

ous grounds, the main contention being that the proceedings before the Palm Beach county commissioners and the establishment of the highway do not constitute an incumbrance upon the title of the defendants. It seems to be the law by the weight of authority that an established highway upon and over rural lands does not constitute an incumbrance of which the purchaser may complain. But this rule does not apply in towns laid out in lots, blocks, and streets. Taking the option and the map attached thereto, with the allegations in the bill, of the character and uses to which this property could be put, it seems to me the same reasons which induce the courts to apply the rule of highways taking parts of lots in a town would govern in the case made by the bill here. The property is described in the option by lot, the price is by front foot on the ocean, it is provided that the optionee may plat the property into lots for sale, and provision made for release by the optionor of lots sold, recognizing, it seems to me, that the lands were valuable for residential purposes alone, and not fitted for agricultural purposes. I cannot see why the rule of law applicable to farming lands should apply in this case, and I am of opinion that the right of way over portions of these lots constitute an incumbrance upon the title.

[2] It is contended that complainant has a plain, adequate, and complete remedy at law. The bill seeks to fasten upon the lands a vendee's lien for the amount paid out by him. This lien is recognized in parties having a contract to purchase lands, and, if the facts alleged in the bill suffice to put the complainant in the position of a contract purchaser, his right to maintain the suit seems clear. The jurisdiction of equity to enforce a lien is clear. The bill alleges that the complainant, within the life of the option, notified the defendant of his intention to exercise the option and proceeded to perform the duty placed upon him by the option of having the property surveyed, in order that it might be described in the deed by metes and bounds. I do not think it was incumbent upon him to tender the further sum of $30,000 to complete the first payment provided for in the option. If this does not place him in the position of a contract purchaser and thereby raises a vendee's lien, such lien cannot arise in favor of an optionee. And I am satisfied the same reasons, from which the lien in favor of a contract arises, support a lien in favor of the optionee in the position of the com-

plainant in this case under the allegations of the bill of complaint.

There are other grounds of the motion, but having given them careful consideration, I do not think either of them well taken. The motion to dismiss the bill will be denied.

The defendants also move to strike the eighth paragraph of the bill. This paragraph alleges the amounts paid out for survey and counsel fees. Without deciding now whether the amounts claimed are liens upon the property, it appears to me better to leave that question for the final hearing. The motion to strike the eighth paragraph of the bill will therefore be denied, without prejudice to the question being raised at the final hearing.